**K&L GATES LLP**
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001
Geoffrey M. Davis (SBN 214692)
geoff.davis@klgates.com
Stephen P. Farkas (SBN 234060)
stephen.farkas@klgates.com

Attorneys for Plaintiff Crane Co.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRANE CO.,<br><br>           Plaintiff,<br><br>     vs.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY,<br><br>           Defendant. | Case No.  2:14-cv-06509-DMG (AGRx)<br><br>**CRANE CO.'S FIRST AMENDED COMPLAINT FOR**<br><br>**(1)  CONTRACTUAL INDEMNITY;**<br><br>**AND**<br><br>**(2)  COMPARATIVE EQUITABLE INDEMNITY**<br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiff Crane Co., and files this First Amended Complaint for breach of contractual indemnity and comparative equitable indemnity. The original Complaint filed in this action seeks to hold the defendant responsible for the verdict and related costs and expenses incurred by Crane Co. in connection with the action captioned *Elaine Margie Paulus, et al. v. Access Hotels & Resorts, et al.*, No. BC 437739 (Super. Ct. Los Angeles) (the "Paulus Action"). Crane Co. contested and vigorously defended each and every allegation made against it in the Paulus Action. Nonetheless, the jury held Crane Co. liable for the plaintiff's injuries in the Paulus Action. In view of that finding by the jury, with which Crane Co. respectfully disagrees, Crane Co. brings this action and asserts the allegations and contentions in the original Complaint and this amended Complaint solely to vindicate its rights to indemnity from the defendant for the amount of the verdict in the Paulus Action and related costs and expenses.

Through this First Amended Complaint, Crane Co. complains and alleges as follows:

## INTRODUCTION

1. Elaine M. Paulus, individually and as personal representative of the Estate of William Paulus; Dee Anne Walker; Gregory Paulus; and Mark Paulus ( the "Paulus Claimants") sued Crane Co. and various other defendants in the Los Angeles County Superior Court through a Complaint for Wrongful Death and a Survival Action filed on May 13, 2010 (the "Paulus Complaint," attached hereto as Exhibit A). The Paulus Complaint alleges that William Paulus developed mesothelioma and died as a result of his exposures to various asbestos-containing products.

2. The Paulus Complaint alleged that Crane Co. and various other defendants were liable to the Paulus Claimants for claims sounding in, *inter alia*, negligence and strict liability. Crane Co. defended itself and against the claims asserted against it in the Paulus Complaint, asserting all appropriate defenses. Crane

Co. also participated in settlement discussions with the Paulus Claimants, but the settlement discussions were ultimately unproductive.

3. On August 9, 2012, the Paulus Claimants' claims proceeded to trial against and Crane Co. and two other defendants; the other defendants settled with the Paulus Claimants during the course of trial. During the trial, the Paulus Claimants presented evidence that William Paulus had been exposed to an asbestos-containing sheet gasket material distributed by Crane Co., called Cranite. At the end of the trial, the jury returned a verdict for the Paulus Claimants on their claims for negligence and strict liability, awarding $398,635 in economic damages and $6,500,000 in non-economic damages and finding Crane Co. 10% liable (the "Paulus Verdict," attached hereto as Exhibit B).

4. The trial court entered a final judgment against Crane Co. on the Paulus Verdict for the total amount of $755,085 on October 5, 2012 (the "Paulus Judgment"). Crane Co. moved the trial court for judgment notwithstanding the verdict, and such motion was denied by order entered December 17, 2012.

5. Crane Co. appealed the Paulus Judgment to the California Court of Appeal, which affirmed the Paulus Judgment in a decision dated March 24, 2014 (the "Paulus Opinion," attached hereto as Exhibit C).

6. Crane Co. sought review of the Paulus Opinion in the Supreme Court of California, and its petition for review was denied in an order entered on June 11, 2014, rendering the Paulus Judgment against Crane Co. final. On June 26, 2014, Crane Co. paid $898,399.81 to fully satisfy the Paulus Judgment.

7. Crane Co.'s Complaint against The Goodyear Tire & Rubber Company ("Goodyear") seeks an adjudication of Crane Co.'s rights to contractual indemnity and comparative equitable indemnity against Goodyear for the Paulus Judgment.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), in that complete diversity of citizenship exists between Crane

Co. and the Defendant, Goodyear, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

9. This Court has personal jurisdiction over the Defendant because, upon information and belief, the Defendant (1) is qualified to do business as a foreign corporation in California, (2) was and is currently authorized to do business in California, and (3) has regularly conducted business in California and the Southern District of California.

10. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(a), 1391(b), and 1391(c) in that, upon information and belief, the Defendant resides in this District, and/or a substantial part of the events or omissions giving rise to Crane Co.'s claims took place in this District.

## PARTIES

11. Crane Co. is a Delaware corporation with its principal place of business in Stamford, Connecticut. Since the 1850s, Crane Co. has been a manufacturer and seller of valves for industrial and commercial uses.

12. Crane Co. is informed and believes, and based thereon alleges that Defendant Goodyear is a corporation duly organized and existing under the laws of the State of Ohio and maintains its principal place of business at 200 Innovation Way, Akron, Ohio, 44316-0001.

13. The Defendant is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, including without limitation Goodyear Canada Inc. ("Goodyear Canada").

## GENERAL ALLEGATIONS

14. Beginning around 1914 and continuing until mid-1969, Goodyear developed, designed, manufactured, and sold asbestos-containing sheet gasket material ("asbestos-containing sheet"). This product is also sometimes referred to as "asbestos sheet," "asbestos sheet packing," or "packing." Goodyear produced its asbestos-

containing sheet in various sizes and thicknesses, typically ranging from three to five feet in width and length with thicknesses of 1/32- to 1/4-inches. Users of this product typically would cut gaskets from the bulk sheets to their required shape and size for use in valves, piping, and other industrial equipment.

15. Goodyear sold its asbestos-containing sheet to numerous customers under different brand names. Under Goodyear's recipes, formulas, and design, Goodyear's asbestos-containing sheet typically contained 75%-85% asbestos and 25%-15% rubber and chemicals.

16. Goodyear designed, manufactured, and sold some of its asbestos-containing sheet under the brand name "Goodyearite."

17. Upon information and belief, Goodyear designed, manufactured, and sold the majority of its asbestos-containing sheet to a company known as Durabla Manufacturing Company ("Durabla") from 1914 to mid-1969; Goodyear's wholly owned subsidiary, Goodyear Canada Inc. ("Goodyear Canada"), sold asbestos-containing sheet to Durabla thereafter until sometime in or about 1973.

18. From approximately 1916 or thereabouts to mid-1969, Goodyear sold a small portion of asbestos-containing sheet to Crane Co., under the brand name "Cranite."

19. From about 1960 to 1969, Goodyear was the exclusive seller of Cranite to Crane Co.

20. In 1969, Goodyear shut down its United States-based asbestos-containing sheet manufacturing operations and shipped the equipment that it had used to manufacture asbestos-containing sheet to its wholly owned subsidiary, Goodyear Canada. Thereafter and until approximately the early 1970s, Goodyear Canada sold a small portion of its asbestos-containing sheet to Crane Co. under the brand name Cranite.

21. From mid-1969 to approximately the early 1970s, Goodyear Canada was the exclusive seller of Cranite to Crane Co.

22. After Goodyear Canada's production of Cranite ceased in approximately the early 1970s, Crane Co. had no other suppliers of Cranite. At that time, Crane Co. discontinued the Cranite sheet product and began purchasing alternative sheet from other manufacturers.

23. Crane Co. used Cranite as a component part in certain of its valves or, at material and relevant times, sold Cranite for resale to approved customers (other than the United States Navy) as a replacement part for use in its valves.

24. Crane Co. never designed or manufactured Cranite, asbestos-containing sheet, or any similar sheet material.

25. In purchasing Cranite from Goodyear and Goodyear Canada, Crane Co. relied on the expertise and experience of Goodyear and Goodyear Canada in the design of, formulation of, specifications for, and manufacture of asbestos-containing sheet. At all relevant times, Crane Co. had no expertise or experience in the design, formulation, or material specifications for, or the manufacturing of, the asbestos-containing sheet it purchased from Goodyear and Goodyear Canada.

26. On July 30, 2014, Crane Co. tendered the Paulus Judgment to Goodyear, demanding indemnification for the costs incurred in defending against the Paulus Claimants' claims and satisfying the Paulus Judgment. Goodyear did not respond to Crane Co.'s tender and has not otherwise indicated that it will indemnify Crane Co. for the Paulus Judgment.

27. Crane Co. has been forced to expend substantial costs and attorneys' fees to defend the Paulus Claimants' action and satisfy the Paulus Judgment.

28. Crane Co. has satisfied all conditions to its recovery from Goodyear and/or those conditions have been waived by Goodyear.

## FIRST CAUSE OF ACTION

(Contractual Indemnity)

29. The averments of paragraphs 1 through 28 herein are incorporated by reference as if fully set forth herein.

30.  Upon information and belief, Crane Co. entered into a series of contracts with Goodyear for the manufacture and sale of Cranite by Goodyear to Crane Co.

31.  Crane Co. fully performed its duties under the contracts.

32.  Goodyear was a merchant with respect to asbestos-containing sheet, including without limitation Cranite.

33.  Upon information and belief, in the aforesaid contracts Goodyear expressly or impliedly agreed to manufacture and sell Cranite to Crane Co. "which is suitable for use as a gasket material . . ." and which was fit for the ordinary purposes for which it was used.

34.  Despite Crane Co.'s vigorous defense of the claims made against it with respect to the Cranite at issue in the Paulus Action, and Crane Co.'s consistent contention, which it maintains herein, that Cranite was safe for its ordinary and intended purposes and suitable for use as a gasket material, the Paulus Claimants alleged that William Paulus was injured by exposure to Cranite and other asbestos-containing products, and the jury held Crane Co. liable.

35.  By and through these contracts, Goodyear implicitly promised to defend and indemnify Crane Co. for any alleged defects in the Cranite it designed, manufactured, and sold to Crane Co.

36.  Crane Co.'s liability to the Paulus Claimants, as well as Crane Co.'s costs in defending the Paulus Claimants' claims, including the necessary and reasonable attorneys' fees and other legal costs in defending the Paulus Claimants' case, was caused by Goodyear's breach of its contractual duties and warranties, including, without limitation, the express and implied warranties of merchantability, the duty to use reasonable care in the performance of the contracts, and Goodyear's implied promise to defend and indemnify Crane Co. against such claims.

//

//

//

## SECOND CAUSE OF ACTION

(Comparative Equitable Indemnity)

37. The averments of paragraphs 1 through 36 herein are incorporated by reference as if fully set forth herein.

38. Goodyear, owing to its design, specifications, manufacture, and sale of Cranite to Crane Co., is liable to Crane Co. for Crane Co.'s liability to the Paulus Claimants, as well as for Crane Co.'s costs and attorney's fees in defending against the Paulus Claimants' claims.

39. As the designer, manufacturer, and seller of Cranite, it is equitable and fair that Goodyear indemnify Crane Co. for its losses and payments in the Paulus Claimants' action.

## PRAYER FOR RELIEF

**WHEREFORE,** Crane Co. prays for judgment against Defendant Goodyear as follows:

1. For monetary damages in excess of $75,000 exclusive of interests and costs; and
2. For attorneys' fees, costs of suit, pre-judgment and post-judgment interest and any other relief that the court may deem just and proper.

## JURY TRIAL DEMANDED

A jury trial is demanded for the causes of action pled herein.

**K&L GATES LLP**

Dated: September 2, 2014     By: _____
Geoffrey M. Davis
Attorney for Plaintiff Crane Co.